Kevin S. Johnson, Esq.
HAMRA LAW GROUP, P.C.
1 Linden Place, Suite 207
Great Neck, NY 11021
Tel: 646.590.0571
kjohnson@hamralawgroup.com
kevinsjohnson1@gmail.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ATABAK EBRAHIMZADEH, *on behalf of himself and others similarly situated*,

                          Plaintiffs,

   -against-

AVI LEVY, GAD ABECKASER, DAVID ZION, KETER 13 CAPITAL, LLC, and ATN 1 EXPRESS, INC.,

                        Defendants.
-----------------------------------------------------------------X

Case No.: 1:21-cv-4532

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff, ATABAK EBRAHIMZADEH (hereinafter "Plaintiff"), by and through his attorneys, HAMRA LAW GROUP, P.C., complaining of the Defendants, AVI LEVY, GAD ABECKASER, DAVID ZION, KETER 13 CAPITAL, LLC, and ATN 1 EXPRESS, INC.., does allege, upon information and belief, the following:

**THE NATURE OF THE ACTION**

1. This is an action alleging fraud, civil conspiracy to commit fraud, racketeering, unjust enrichment, misrepresentation, and the conspiracy to commit the same under the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) and, via supplemental jurisdiction, New York State common law claims of fraudulent conversion, deceit, fraud, detrimental reliance, aid and abetting the commission of a tort, and conspiracy

to commit a tort by Defendants and other unknown entities against Plaintiff, and others so similarly situated as to constitute a collective and class action. As will be detailed below in the enumerated factual allegations, Defendants marketed themselves as sellers of a certain brand of nitril gloves, which upon purchase of the same from Defendants, Plaintiff was made aware were in fact counterfeit and of a quantity less than that which was bargained. Upon rejection of the "nitril gloves," Plaintiff was defrauded of certain monies, which was covered, laundered, and fraudulently transferred by various named Defendants, in violation of the RICO Statute and the common law claims plead herein. Plaintiff brings the same on behalf of other similarly situated in that, as detailed below, Plaintiff is not and has not been the sole victim of Defendants' fraudulent schemes, and other such consumers, customers, and businesspersons such have himself have been the victim of the schemes of Defendants', some known to Plaintiff.

## **JURISDICTION**

2. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 as this action involves actions brought under violations of Federal Law.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Code § 1332 in that there is diversity in citizenship between the Plaintiff and Defendants in this action and the amount in controversy exceeds the amount of $75,000.00.

4. The Court has subject matter jurisdiction in that the Defendants violated 18 §§ 1962(a); 1962(b); 1962(c); and 1962(d), all violations of Title IX of the Organized Crime Control Act of 1970, also known as the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO Statute" or "RICO").

5. This Court has personal jurisdiction over Defendants because any action brought pursuant to the RICO Statute in a U.S. District Court, that Court may cause parties residing in another District to be summoned to that district if the "ends of justice require" it. Given that Defendants operate their businesses nationally, in New York, and have places of business in New York, and that Plaintiff is a resident thereof, the "ends of justice" require that this Court exercise personal jurisdiction over Defendants. 28 U.S.C. § 1965(b).

6. This Court has supplemental jurisdiction over Plaintiff's related State and common law claims pursuant to 28 U.S.C. § 1367.

## VENUE

7. Venue is proper in this District because Plaintiff resides in this District and the omissions and commissions that comprise this action took place, in part, in this District. 28 U.S.C. § 1391(b)(2).

8. Venue is proper in this District because Defendants have residence in this District. 28 U.S.C. § 1391(b)(1).

9. Venue is proper in this District because Defendants because Defendants are subject to personal jurisdiction in this venue and is thus deemed to reside in this venue as its contacts with this District are sufficient to subject it to personal jurisdiction in this District if it were a separate State. 28 U.S.C. § 1391(d).

10. Venue is proper in that Plaintiff and others similarly situated are persons "injured in his business or property by reason of a violation of § 1962 may sue therefore in any appropriate United States District Court." 18 U.S.C. § 1964(c).

## COLLECTIVE ACTION ALLEGATIONS

11. Plaintiff brings the Federal Law causes of action on behalf of himself and all other similarly situated consumers, customers, and legitimate business associates, who have been, are, or will be victims, knowing or unknowing of Defendants' fraudulent and illegal schemes involving counterfeit goods, the collection of illegal debts, money laundering, and other activities under the RICO Statute and the associated common law claims plead herein.

12. Plaintiff is an appropriate representative of this action under 29 U.S.C. § 216(b).

13. Plaintiff and other consumers, customers, and legitimate business associates (hereinafter "Collective Plaintiffs") are similarly situated in that they are all subject to Defendants common plan and practice of selling the counterfeit goods as described below and the subsequent efforts to continually defraud Collective Plaintiffs, their schemes to launder or otherwise divest themselves of the funds gained from the aforesaid violations of the RICO act, and the allegations plead herein speak to a larger, national scheme to defraud the public and other members of the Collective Plaintiffs.

14. Plaintiff brings the New York State law causes of action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all personas who are or have been the victims of Defendants fraudulent and illegal schemes and enterprises as outlined below ("Class Members").

15. Defendants have presented themselves as legitimate businessmen to the general public and the Class Members, who, like Plaintiff, have done business with Defendants and have been victim to their violations of the RICO Statute and the underlying racketeering scheme.

16. The persons in the Class identified above are so numerous that joinder of all Members is impractible. Although the precise number of such persons is not known to the Plaintiff, the facts on which the calculation of that number can be readily determined by Defendants'

records which are presently within the sole control of Defendants. Plaintiff is aware of at least two other victims and Defendants have presented themselves as national vendors of the counterfeit gloves which formed the basis of the scheme at the center of this complaint and its allegations.

17. The number of the Class Members exceeds forty (40) based upon the reach of Defendants and market for the counterfeit items at the center of the allegations detailed below.

18. There are questions of law and facts common to the Class the predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a. Whether Defendants engaged in a national and international scheme to defraud, misrepresent, conspire to do the same, and violate the RICO Statute in marketing counterfeit goods to the general public and citizens of the United States in particular;

    b. Whether Defendants engaged in a fraud, among other torts, in failing to deliver the quality and quantity of the nitril gloves as contracted;

    c. Whether Defendants have and are working concurrently to divest the monies paid by Class Members to Defendants, and fraudulently procured, into the investment of other businesses, persons, and entities.

    d. Whether Defendant engaged in the above and below in exploitation of the COVID-19 pandemic when the demand and interest in the subject and alleged nitril gloves was and is at its peak, providing counterfeit goods which did not meet the appropriate safety and sanitary standards medically required during the height of the aforesaid pandemic.

19. Plaintiff's claims are typical of any class and are not, as not the only purchaser of the aforesaid counterfeit goods (nitril gloves) currently known and that other Class Members have been so defrauded as to expect great expense and risk in attempting to and purchasing the same.

20. Class Members are entitled to the same protections under the RICO Statute and any claim of action brought pursuant to the relevant RICO Statute sections.

21. Defendants act and refuse to act on grounds applicable to the Class Members, in current violation of the RICO Statute, with respect to the entire Class, thereby making declaratory relief with respect to the entire Class appropriate.

22. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff understands that, as the class representative, he assumes a fiduciary responsibility to the Class to represent its interests fairly and adequately. Plaintiff recognizes as the class representative, he must represent and consider the interests of the Class just as they would represent and consider their own interests. Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Class. Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class. Plaintiff understands that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in his possession, and testify, if required, in a deposition and in trial.

23. Plaintiff has retained counsel experience in class action litigation.

24. A class action is superior to other available methods for the fair and efficient adjudication of this action, in that the nature of the Defendants schemes, have a likely touched a number of members of the public, in this District and nationally, who are unaware and may lack the financial resources to fully prosecute an action under the RICO Statute and the related common law claims. Furthermore, the treatment of this action as a Class Action will eliminate the need for unduly duplicative litigation in disparate Districts with inconsistent judgments.

25. The treatment of this as a Class Action is also warranted in that the injuries alleged in this action were caused by a common set of misrepresentations, written and oral, made to Plaintiff and Class Members, who as consumers of the counterfeit goods in question were the target of these schemes and would, in the course of the buying of Defendants' "goods," would have been caused harm in the same general method and manner.

26. The treatment of this as a Class Action is also warranted in that the potential Class Members would have reasonably relied on the same misrepresentations of Defendants and that the Defendants fraudulent statements and representations were uniform and marketed to a general audience of consumers, the Class Members.

27. The treatment of this as Class Action is also warranted in that a global settlement of the damages to Class Members, if the RICO Statute allegations are proven, would be natural and appropriate, even in the event each individual Class Member's damages are fact specific. Furthermore, the common damage to Class Members is the monetary damages for the purchase of the counterfeit goods and related damages, easily calculatable through documentary evidence likely in possession of the Plaintiff, Class Members, and/or Defendants themselves.

## THE PARTIES

28. Plaintiff is over the age of eighteen and is a resident of the State of New York.

29. Defendant LEVY is a resident of the State of Florida

30. Defendant ABECKASER is a resident of the State of Florida

31. Defendant ZION is a resident of the State of New York, County of Nassau.

32. Defendant ZION is an owner, shareholder, manager, executive, agent, and/or president of Defendant KETER 13 CAPITAL, LLC ("KETER 13").

33. Defendant ZION is an owner, shareholder, manager, executive officer, agent, and/or president of Defendant ATN 1 EXPRESS, INC. ("ATN 1") (Defendants KETER 13 and ATN 1 are hereinafter collectively referenced hereinafter as "ZION Defendant Corporations").

34. Defendant KETER 13 C is a domestic limited liability company registered and authorized to do business in the State of New York. The aforesaid corporation was incorporated in Queens County, New York, according to its registration with the New York State Department of Labor, Division of Corporations registration.

35. Defendant KETER 13 has a registered agent and address of service of process of 7 Sherwood Drive, Lakewood, New Jersey with a listed agent of TAWIL TAX AND ACCOUNTING SOLUTIONS.

36. Defendant KETER 13 has a principal place of business in 7 Sherwood Drive, Lakewood, New Jersey.

37. Defendant KETER 13, on its public website, keter.capital, that they specialize in building small business websites, listing such clientele as attorneys, local businesses, garden care businesses, etc.

38. Defendant KETER 13 lists a contact number, publicly, as 516.808.2726, a New York State area code, though no physical office address is listed.

39. Defendant ATN 1 is a domestic business corporation registered and authorized to do business in the State of New York.

40. Defendant ATN 1 has a principal place of business in Kings County, State of New York.

**FACTUAL ALLEGATIONS**

41. On or about March 12, 2021, Plaintiff ordered certain nitrile gloves from Defendant LEVY and ABECKASER. The number of the gloves to be delivered would be in the total of 30,000 boxes of gloves, with 100 pairs of gloves in each box.

42. It was agreed to by the Plaintiff and Defendants LEVY and ABECKASER that the price for the aforesaid number of nitrile gloves would be $345,000.00.

43. It was agreed that the gloves would be delivered by Defendants LEVY and ABECKASER by March 16, 2021.

44. This agreement constituted a contract between Plaintiff and Defendants LEVY and ABECKASER for the above consideration, namely, delivery of the aforesaid nitrile gloves and the payment of $284,000.00 for a deposit. The remaining balance would be owed and paid upon delivery.

45. The aforesaid gloves were to be delivered to a location in Doral, Florida, where Plaintiff would have an individual inspect and approve the aforesaid shipment of the alleged nitril gloves, prior to delivery.

46. On or about March 12, 2021, Plaintiff wired the aforesaid monies to an account held by, or believed by Plaintiff to be held by, Defendants LEVY and ABECKASER, in full satisfaction of Plaintiff's promises under the aforesaid contract.

47. On or about March 16, 2021, a partial shipment of the alleged nitrile gloves were delivered to a warehouse in Doral, Florida.

48. Plaintiff, soon thereafter, sent a representative to inspect the goods for compliance with the aforesaid contract.

49. The inspection determined that the gloves were counterfeit, defective, and short of the total order agreed upon. It was represented to Plaintiff that each box of gloves would contain one

hundred (100) gloves; instead, each contained only thirty (30) gloves. There were only a total of 17,230 boxes.

50. On or about March 17, 2021, Plaintiff immediately contacted Defendants LEVY and ABECKASER, promptly rejecting the goods, indicating to aforesaid Defendants that the goods were not in compliance with the aforesaid contract, and demanding a full refund of the $284,000.00.

51. On or about March 17, 2021, Defendants LEVY and ABECKASER, retook possession of the aforesaid goods.

52. Defendants LEVY and ABECKASER made representations that the monies paid by Plaintiff for the defective and inadequate goods would be returned to Plaintiff in total.

53. On or about April 4, 2021, Defendants LEVY and ABECKASER, returned by wire transfer the amount of $75,000.00 to Plaintiff, short of the full refund promised to Plaintiff.

54. Thereafter, Defendants LEVY and ABECKASER refused to return the remaining balance of $209,000.00, after requests and demands from Plaintiff.

55. Defendants, thereafter, began to evade and avoid contact and communications with the Plaintiff regarding the breach of the aforesaid contract and refund of the remaining amount owed to Plaintiff of $209,000.00.

56. Plaintiff contacted his bank to report the aforesaid fraud and misrepresentation by Defendants LEVY and ABECKASER. Plaintiff's bank represented that Defendants LEVY and ABECKASER wired approximately $159,375.00 to Defendant ZION and/or the named Corporate Defendants, owned and represented by Defendant ZION.

57. Upon discovery of this fraudulent transfer, Plaintiff's bank, Citibank, N.A., froze the account into which the aforesaid monies were transferred to Defendant ZION and/or the named Corporate Defendants.

58. Thereafter, Defendant ZION assumed the debt owed Plaintiff under an agreement with Plaintiff by which Defendant ZION and/or the named Corporate Defendants (hereinafter "ZION Defendants") would transfer the $159,375 held in the aforesaid accounts back to Plaintiff, as well as guaranteeing material assistance in retrieving the remaining balance owed to Plaintiff by Defendants LEVY and ABECKASER.

59. The ZION Defendants, though Defendant ZION, represented that they were authorized by Defendants LEVY and ABECKASER to take and hold in escrow, as collateral, approximately $75,000.00 worth of jewelry and other valuables held by a pawn shop. The aforesaid valuables were property of Defendants LEVY and ABECKASER. Defendant ZION and through the ZION companies, would sale the remaining jewelry and pocket the profits of what was left after paying the Plaintiff.

60. The ZION Defendants represented that they would need to procure $10,000.00 in funding to retrieve the aforesaid valuables from the aforesaid pawn shop.

61. As a part of the contract with the ZION Defendants, Plaintiff agreed to split the cost of the $10,000.00, taking on responsibility for $5,000.00 of the aforesaid cost, until the valuables were recovered from the aforesaid pawn shop.

62. The ZION Defendants represented that they would reimburse Plaintiff for the $5,000.00 which he agreed to put up for retrieval for the aforesaid valuables.

63. Plaintiff then wired the ZION Defendants the aforesaid $5,000.00.

64. The ZION Defendants then represented that if the Defendants LEVY and ABECKASER did not return the $55,000.00 remaining within 60 days from May 6, 2021, the ZION Defendants would sell the aforesaid valuables held in collateral and return to Plaintiff the aforesaid $55,000.00, plus interest.

65. Plaintiff then, in furtherance of the aforesaid contract with the ZION Defendants, contacted his bank and released the hold on the ZION Defendants account. The bank complied with the request from Plaintiff.

66. Plaintiff then contacted the ZION Defendants to inquire as to when the $159,375.00 would be transferred, per the terms of the contract, to Plaintiff.

67. Despite requests from Plaintiff, the ZION Defendants have not transferred the aforesaid sum to Plaintiff and has not indicated that the same would be done.

68. The ZION Defendants have willingly breached their contract with Plaintiff and refuse to remedy the same or mitigate Plaintiff's losses and damages.

69. The ZION Defendants have willingly breached their contract with Plaintiff to refund the $50,000.00 under the aforesaid terms and refuse to remedy the same or mitigate Plaintiff's losses and damages.

70. The ZION Defendants have willingly breached their contract with Plaintiff to refund Plaintiff for the $5,000.00 fronted to the ZION Defendants for retrieval of the aforesaid valuables of Defendants LEVY and ABECKASER from the aforesaid pawn shop.

71. To date, all named Defendants have refused and failed to refund Plaintiff any of the aforesaid monies due and owing to him by virtue of the contracts between Plaintiff and the ZION Defendants and the contract between Plaintiff and Defendants LEVY and ABECKASER.

### **COUNT ONE: FEDERAL CIVIL RICO CLAIM SEC. 1962(C)**

72. Plaintiff incorporates by reference all the allegations pled herein all the preceding paragraphs as if fully set forth herein.

73. All Defendants violated RICO and Plaintiff, and Class Members, were injured as a result.

74. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. Sec. 1961(3).

75. Each Defendant violated 18 U.S.C. Sec. 1962(c) by the acts described in the prior paragraphs, and as further described below.

76. <u>The Enterprise</u>: Defendants LEVY and ABECKASER together with Defendant ZION and the ZION controlled companies, and the unknown companies of LEVY, ABECKASER, and ZION, form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. Sec. 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may be other members of the enterprise who are unknown at this time.

77. Alternatively, the ZION controlled companies each constitute a separate enterprise within the meaning of 18 U.S.C. Sec. 1961(4).

78. Alternatively, the ZION controlled companies together constitute an enterprise within the meaning of 18 U.S.C. Sec. 1961(4).

79. Each enterprise has engaged in and their activities have affected interstate and foreign commerce.

80. Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. Sec. 1961(1), 1961(5), and 1962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

81. <u>Predicate Act: Use of Mails and Wires to Defraud Plaintiff and Class Members in Violation of 18 U.S.C. Sec. 1341 and 1343</u>. Predicate acts of racketeering activity are acts which are

indictable under provisions of the U.S. Code enumerated in 18 U.S.C. Sec 1961(1)(B), as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

82. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims, and methods of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning at least in the last few years and continuing to the present, and there is a continued threat of repetition of such conduct, to Plaintiff and Class Members.

83. Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

84. Defendants committed acts constituting indictable offenses under 18 U.S.C. Sec. 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud Plaintiff and Class Members or to obtain money from Plaintiff and Class Members by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants LEVY and ABECKASER presented themselves as legitimate businessmen, who could help Plaintiff and Class Members, procure the aforementioned nitrile gloves via by the U.S. Mails and by private or commercial interstate carriers, and electronically, or received such therefore. Defendants also transmitted or cause to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals.

85. Defendants LEVY and ABECKASER would fail to deliver the quality and quantity of gloves or other goods as promised. When the Plaintiff and Class Members confront Defendants LEVY and ABECKASER, the Defendants would then, or prior to, funnel the funds from the

fraudulent sale, into the possession of Defendant ZION and the ZION Defendants, who would then channel the money through other unknown assets (i.e. jewelry) out of the reach of Plaintiff and Class Members. Upon being confronted, Defendant ZION and the ZION Defendants then plead ignorance to a formal relationship with Plaintiff or with Defendants LEVY and ABECKASER.

86. The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

87. Defendants carried out their scheme in different states and countries and could not have done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires. In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiff in furtherance of the scheme to defraud Plaintiff and Class Members and these communications were typically transmitted by wire (i.e. electronically) and/or the through the United States mails or private interstate commercial carriers.

88. Defendants also caused Plaintiff and Class Members to transmit hundreds of thousands of dollars, up to amounts unknown, by wire across interstate lines, including Florida, New Jersey, and New York.

89. Defendants shared objective was and is to divert funds to their own benefit and to facilitate the payment of fraudulent payments and conversion and laundering of the same between named and unnamed individuals and corporations to defraud Plaintiff and Class Members.

90. Plaintiff reasonably and justifiably relied upon Defendants' false representations, false pretenses, and deceptive communications, and Plaintiff and Class Members have been

damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

91. <u>Predicate Act:  Transport and Receipt of Stolen Money in Violation of 18 U.S.C. Sec. 2314 and 2315</u>. Defendants committed acts constituting indictable offenses under 18 U.S.C. Sec. 2314 in that having devised or intended to devise a scheme or artifice to defraud Plaintiff and Class Members by means of false or fraudulent pretenses, representations, or promises, Defendants transported or caused to be transported in interstate or foreign commerce money having a value of $5000 or more, which was stolen, converted or taken by fraud. Defendants also committed acts constituting indictable offenses under 18 U.S.C. Sec. 2315 in that they received money in excess of $5000, which crossed a State or United States boundary after being stolen, unlawfully converted, or taken. The acts of Defendants set forth above were done willfully and with knowledge that the money was stolen, converted, or taken by fraud. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

92. <u>Continuity of Conduct</u>: Defendants' violations of state and federal law as set forth herein, each of which directly or indirectly injured Plaintiff and Class Members and other market participants, constituted a continuous course of conduct spanning a period from 2020 to present, which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. Sec. 1961(1) and (5).

93. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. Sec. 1962(c).

## COUNT TWO: FRAUDULENT CONVERSION

94. Plaintiff incorporates by reference all the allegations pled herein all the preceding paragraphs as if fully set forth herein.

95. Plaintiff had an absolute and superior right to the possession of the aforesaid amounts in controversy, as identified in the foregoing.

96. The Defendants lack authorization to move, divest, or otherwise hold possession over the aforesaid funds and as such deprived the Plaintiff of the aforesaid monies.

97. As such, Plaintiff was excluded from the exercise of his rights to control and possess the aforesaid monies.

98. As a result of the tortious conduct of the Defendants, as aforesaid, Plaintiff was harmed in an amount in excess of $75,000.00.

## COUNT THREE: DECEIT

99. Plaintiff incorporates by reference all the allegations pled herein all the preceding paragraphs as if fully set forth herein.

100. Defendants made a false statement:

101. Defendants made such false statements knowingly, willingly, and with the intent to defraud Plaintiff from the aforesaid monies;

102. As a result of the knowing, willing, and purposeful deceit of Plaintiff, Plaintiff was harmed in an amount that exceeds $75,000.00.

## COUNT FOUR: FRAUD

103. Plaintiff incorporates by reference all the allegations pled herein all the preceding paragraphs as if fully set forth herein.

104. Defendants made a misrepresentation of fact, to wit, that the aforesaid goods would be of the quantity and quality and that the aforesaid goods were in fact of the quality and quantity as agreed to by Plaintiff and Defendants.

105. Defendants knew, at the time of making the aforesaid misrepresentation of fact, that the same was not true, false, inaccurate, and a material misrepresentation.

106. Plaintiff, as a party to the contract for sale, had no reason to doubt the representations of Defendants, and was justified in his reliance on the same.

107. As a result of the fraudulent and untrue representations of the Defendants, Plaintiff was harmed in an amount that exceeds $75,000.00.

## COUNT FIVE: DETRIMENTAL RELIANCE

108. Plaintiff incorporates by reference all the allegations pled herein all the preceding paragraphs as if fully set forth herein.

109. Defendant ZION, on behalf of himself and the named Corporate Defendants, represented to Plaintiff that the aforesaid sums of money, owed to Plaintiff by Defendants would be returned and refunded to Plaintiff by himself and/or the named Corporate Defendants, for which he was a representative, owner, agent, or otherwise authorized to do the same.

110. Plaintiff reasonably relied on the representations of Defendant ZION, individually and on behalf of the name entities, based upon the aforesaid facts and actions of Defendants.

111. Defendant ZION, individually and on behalf of the named Corporate Defendants, should be under principles of equity and fairness, be required to and is liable for returning and repaying Plaintiff for the aforesaid monies.

112. As a result, Plaintiff was harmed and suffered a detriment in an amount in excess of $75,000.00.

## COUNT SIX: AID AND ABETTING THE COMMISSION OF A TORT

113. Plaintiff incorporates by reference all the allegations pled herein all the preceding paragraphs as if fully set forth herein.

114. Defendant ZION and his various entities, knew of the commission of the torts of conversion, deceit, fraud, and breach of contract of Defendants.

115. Defendants did, in fact, commit the aforesaid torts.

116. Defendant ZION and his various entities' divestment of the aforesaid monies and refusal to return the same represented a substantial and necessary assistance to Defendants in the commission of the aforesaid torts by them against Plaintiff.

## COUNT SEVEN: CONSPIRACY

117. Plaintiff incorporates by reference all the allegations pled herein all the preceding paragraphs as if fully set forth herein.

118. All named Defendants committed the aforesaid tortious actions.

119. All name Defendants conspired and corresponded regarding the commission of the aforesaid torts.

120. The aforesaid actions by all named Defendants were made in further and continuance of the aforesaid torts, namely, fraudulent misrepresentation, deceit, breach of contract, conversion, and any and all other torts so plead in this Complaint.

121. All named Defendants intended their actions and participation in the overarching conspiracy to defraud and otherwise harm Plaintiff.

122. As a result of the same, Plaintiff was harmed in an amount that exceeds $75,000.00.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, *on behalf of himself and others similarly situated*, respectfully requests the Court:

A. Award compensatory, consequential, exemplary and punitive damages to Plaintiff in an amount to be determined at trial;

B. Designation of this action as a collective and/or class action;

C. Designation of the Plaintiff as Representative of the Class;

D. Costs of the action incurred herein, including expert fees;

E. Attorneys' fees according to applicable Federal and State statutes;

F. Pre-judgment and post-judgment interest, as provided by law;

G. Any and all penalties available under applicable Federal and State law; and,

H. Such other and further legal and equitable relief as this Court deems just and proper.

Dated: Great Neck, New York
August 11, 2021

HAMRA LAW GROUP, P.C.

*/s/ Kevin S. Johnson*
By: Kevin S. Johnson, Esq.
*Attorneys for Plaintiff*
1 Linden Place, Suite 207
Great Neck, New York 11021
(646) 590 – 0571
kjohnson@hamralawgroup.com
kevinsjohnson1@outlook.com